IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOSEPH F. BENTON, III,

      Plaintiff,

v.

CITY OF ATLANTA, YVONNE
RICHARD MENDOZA, AND
COWSER YANCY,

      Defendants.

CIVIL ACTION NO.
1:14-CV-02799-WSD-LTW

## MAGISTRATE JUDGE'S FINAL REPORT AND  RECOMMENDATION

This case  is presently before the Court on Defendants City of Atlanta ("Atlanta"), Richard Mendoza ("Mendoza"), and Yvonne Cowser Yancy's ("Yancy") Motion for Summary Judgment. (Doc. 29).   For the reasons outlined below, this Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED**. (Doc. 29).

## BACKGROUND

I.  **Procedural History**

Plaintiff, proceeding pro se, filed his form Pro Se Employment Discrimination Complaint (the "Complaint") in this  action on August 29, 2014, and the Complaint was entered September 17, 2014.  (Docs. 1, 3).  In Plaintiff's Complaint, Plaintiff alleged generally that Defendants Atlanta, Mendoza, and Yancy (together, "Defendants")

discriminated against him on the basis of his sex and retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5. (Compl. ¶¶ 1, 12-13). Plaintiff also alleged the following sparse facts. On January 31, 2012, Plaintiff alleges that he suffered from discriminatory harassment and retaliation, and that his employment was subsequently terminated. (Compl. ¶¶ 6, 12). Plaintiff asserts that on that date, in the public parking area of a work site, a co-worker, John Summerour ("Summerour"), "dropped his pants and made [a] sexual remark." (Compl. ¶ 14). Plaintiff alleges that he reported Summerour's conduct to supervisors and managers, but that they took no action. (Id.). Because of the alleged inaction, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "Charge"), alleging sexual harassment. (Id.). In that Charge, Plaintiff alleged that the conduct above amounted to a sexually hostile work environment. (Compl., p. 15). Plaintiff also asserted that after reporting the incident, he was placed on administrative leave on February 1, 2012, pending an investigation; and then suspended without pay for five days later, after being accused of "recording [a] sexually hostile work environment," which Plaintiff claims he did not do. (Id.). Plaintiff appears to allege that his paid leave, suspension, and discharge were all retaliatory. (Id., see also Compl., p. 12). Plaintiff seeks the reinstatement of his employment, back pay, $2,500,000, and litigation costs and fees. (Compl., Request for Relief).

Plaintiff provided some minor clarification of the events in the Joint Preliminary Report and Discovery Plan filed June 12, 2015. (Doc. 18). In it, Plaintiff explains that

AO 72A
(Rev.8/82)

in addition to reporting the incident to his supervisor and manager, he emailed other department heads.  (<u>Id.</u>, p. 2).  Plaintiff met with two individuals on February 3, 2012, at Atlanta City Hall, who provided a preliminary statement to Plaintiff in relation to the investigation and placed him on leave.  (<u>Id.</u>, pp. 2-3).  Plaintiff again met with Atlanta employees on February 7, 2012, when he was told he was suspended for video taping the incident.  (<u>Id.</u>, p. 3).  Plaintiff asserts that he was never allowed to give a formal statement or speak with an investigator about the incident, and no resolution was ever made regarding his complaint.  (<u>Id.</u>).

Because Plaintiff was proceeding pro se, on May 12, 2015, prior to the entry of the Joint Preliminary Report and Discovery Plan, the Court entered a Notice to Pro Se Plaintiff, advising Plaintiff of his litigation responsibilities.  (Doc. 17).  In particular, Plaintiff was "**ADVISED** that he must comply with the Federal Rules of Civil Procedure, as well as the Local Rules of this Court."  (<u>Id.</u>, p. 1 (emphasis in original)).  Further, and importantly, Plaintiff was also:

> **ADVISED** that, under Local Rule "7, PLEADINGS ALLOWED; FORM OF MOTIONS," if the deadline for a response to a motion passes without a response being filed, the motion is deemed unopposed. Furthermore, if Defendant files a motion for summary judgment, under Local Rule 56.1, Plaintiff's failure to controvert the statement of material facts provided by Defendant will be taken as an admission of those facts not controverted in Plaintiff's response.

(<u>Id.</u>, p. 2 (emphasis in original) (citing LRs 7.1B, 56.1B(2) NDGa.)).  Finally, Plaintiff was "**REQUIRED** to keep the Court advised of his current address at all times during the pendency of the lawsuit."  (<u>Id.</u>).

Plaintiff participated in discovery, often raising issues by motion or otherwise with the Court.  (See Docs. 21-23).  In a joint motion requesting a discovery extension, Plaintiff and Defendants agreed that Plaintiff's deposition would be taken and that Defendant Atlanta offered to host any deposition requested by Plaintiff.  (Doc. 24). Based upon their joint consent, the Court ordered that the deadline for filing dispositive motions was February 29, 2016, and that any responses in opposition would be due by March 31, 2016.  (Docs. 25, 26).

In its Guidelines for Summary Judgment Practice, the Court carefully laid out instructions for Plaintiff to respond to any motion for summary judgment.  (Doc. 26). First, the Court reiterated the above deadlines, noting that Plaintiff would have to respond no later than March 31, 2016, to any such motion filed by Defendants.  (Id., p. 6).  Next, the Court emphasized that:

> [Plaintiff] shall file a response to the moving party's "Statement of Undisputed Material Facts."  In the response, the [Plaintiff] shall respond to each numbered fact by number, admitting or denying the fact, and providing citations to the record to support any denial as well as an explaining the reason for the denial of the fact.  The Court will deem as admitted those facts in the [Defendants'] statement that the [Plaintiff] party does not controvert with citations to the record in its response to that statement.

(Id. (citing L.R. 56.1(B)(2) NDGa.)).  Finally, Plaintiff was warned that the "[f]ailure to comply with this order, may result in the imposition of sanctions, including the dismissal of this action."  (Doc. 26, p. 8).

On February 29, 2016, Defendants filed the present Motion for Summary Judgment, along with a concise Statement of Undisputed Material Facts and other

4

supporting materials.  (Docs. 28, 29).  Plaintiff was promptly notified of the Motion by the Court Clerk, and warned "that within 21 days from the date said motion was served upon you, you must file all materials, including any affidavits, depositions, answers to interrogatories, admissions on file, and any other relevant materials, which you wish to be considered in opposition to the motion for summary judgment."  (Doc. 30 (citing Fed. R. Civ. Pro. 56(c)(1)(B); Moore v. State of Fla., 703 F.2d 516, 519 (11th Cir. 1983)). The notice provided to Plaintiff continued, "unless otherwise stated by the trial court, the Court will take said motion for summary judgment under advisement immediately upon the close of the aforesaid 21 day period."  (Doc. 30 (citing Moore, 703 F.2d at 519; Donaldson v. Clark, 786 F.2d 1570, 1575 (11th Cir. 1986); Griffith v.Wainright, 722 F.2d 822, 825 (11th Cir. 1985)).  Finally, Plaintiff was instructed that:

> The entry of summary judgment by the trial court is a final judgment on the claim or claims decided.  Whenever the nonmoving party bears the burden of proof at trial on a dispositive issue and the party moving for summary judgment has demonstrated the absence of any genuine issue of fact, the non-moving party must go beyond the pleadings and must designate, by affidavit or other materials, specific facts showing that there is a genuine issue for trial.

(Doc. 30 (internal quotations omitted) (citing Fed. R. Civ. Pro. 56(c)(1)(B); Celotex Corp. v. Catrett, 477 U.S.317, 324 (1986); Finn v. Gunter, 722 F.2d 711, 713 (11th Cir. 1984)).  Despite the instruction and warnings, in the past several months, Plaintiff has never filed a response to Defendant's Motion.


## II.   **Defendants' Motion for Summary Judgment**

Defendants now contend that summary judgement should be granted on all of Plaintiff's claims. (Doc. 29). First, Defendants argue summary judgment should be granted as to Plaintiff's claims against Defendants Mendoza and Yancy because individuals are not subject to liability under Title VII. Next, Defendants contend that Plaintiff's hostile work environment claim fails because (1) Plaintiff has not established a sufficiently severe or pervasive hostile work environment, and (2) because Atlanta took immediate action to remedy Plaintiff's concerns about the workplace. Finally, Defendants contend that Plaintiff cannot establish a prima facie case of retaliation under Title VII because Plaintiff has not offered any evidence that (1) he opposed a practice he reasonably believed was made unlawful under Title VII, and (2) cannot establish that his engagement or participation in an activity protected by Title VII was the reason for any adverse employment action.

Although Plaintiff participated in discovery, filed multiple affirmative motions regarding discovery, and was made aware several times of his obligation in relation to summary judgment, Plaintiff failed to file a response in opposition to Defendants' Motion for Summary Judgment. As a result, Plaintiff has not addressed or disputed the facts set forth in Defendants' Statement of Material Facts to Which There is No Genuine Issue to be Tried ("Defendants' Statement of Material Facts," or "DSMF," Doc. 29-1), and has not responded to any of the legal arguments presented by Defendants in support of their Motion. Local Rule 56.1B(2) requires a plaintiff – including one proceeding pro se – to submit a response to a defendant's statement of undisputed facts that includes,

6

among other things, "responses corresponding to each of the movant's numbered, undisputed facts."   Unfortunately for Plaintiff, under the Local Rules, his failure to respond has significant consequences – the admission of all the facts contained in Defendants' Statement of Material Facts.  See LR 56.1B(2)(a)(2), NDGa ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B(1).").

  "While courts show leniency to pro se litigants not enjoyed by counseled litigants, this leniency does not permit a court to serve as de facto counsel for a party or to overlook deficiencies in their filings[, and] . . . pro se litigants are still required to conform to the procedural rules."  Brandon v. Lockheed Martin Aeronautical Sys., 393 F. Supp. 2d 1341, 1356-58 (N.D. Ga. 2005), (citing GJR Invs., Inc. v. Cnty of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998); see also Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir. 1999)).  Because Plaintiff has failed to comply with the requirements of Local Rule 56 and ignored Defendants' Statement of Material Facts, the Court must deem admitted each of the facts set forth in it.  See Digioia v. H. Koch & Sons, Div. of Wickes Mfg. Co., 944 F.2d 809, 811 n.6 (11th Cir. 1991) (per curiam) ("the facts as set out in [defendant's] concise statement of facts not at issue are deemed admitted" by operation

AO 72A
(Rev.8/82)

of the Local Rules because they were not controverted); Barnett v. Leiserv, Inc., 968 F. Supp. 690, 692 n.1 (N.D. Ga. 1997) (same), aff'd, 137 F.3d 1356 (11th Cir. 1998).

Plaintiff has not only failed to dispute the facts presented by Defendants, but has also has left Defendants' legal arguments completely unaddressed. Generally speaking, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (en banc)); see also Bute v. Schuller Int'l Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."). Nevertheless, the Court cannot simply recommend entry of summary judgment. Instead, the Eleventh Circuit directs trial courts to consider the merits of unopposed motions for summary judgment. See Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc., 374 F.3d 1035, 1039-40 (11th Cir. 2004) (per curiam); United States v. 5800 S.W. 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). This is because Federal Rule of Civil Procedure 56(e) provides that, where "'the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.'" 5800 S.W. 74th Ave., Miami, Fla., 363 F.3d at 1101 (quoting Fed. R. Civ. P. 56(e)). The Eleventh Circuit has defined "appropriate" as a

situation where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Id. (quoting Fed. R. Civ. P. 56(c)); see also Trs. of Cent. Pension Fund, 374 F.3d at 1039. Accordingly, this Court will address the merits of Defendants' Motion for Summary Judgment to determine whether summary judgment is appropriate given the undisputed facts presented.

## III.    Undisputed Material Facts[1]

As of January of 2012, Plaintiff was employed by Atlanta as an Environmental Equipment Operator; in that capacity Plaintiff drove a sanitation truck collecting garbage along a specified route with a team of Laborers who placed the garbage in the truck.

---

[1] As noted, all facts taken from Defendant's Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("DSMF," Doc. 29-1) remain undisputed. This Court accepts as admitted those facts in the moving party's statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing party. LR 56.1B.2(2), (3), NDGa. Subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not create genuine issues of material fact to withstand summary judgment. See Chapman v. AI Transp., 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (en banc); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989). Thus, this Court will not consider any fact (1) not supported by citation to evidence (including a page or paragraph number); or (2) stated as an issue or legal conclusion. Additionally, this Court will assess the admissibility of documentary evidence and any evidence presented through declarations or any other method and the objections thereto as part of its assessment of Defendants' Motion for Summary Judgment. The Court will then rule on the evidence implicitly or explicitly in the consideration of the motion. See Friedlander v. Troutman, Sanders, Lockerman & Ashmore, 595 F. Supp. 1442, 1443 (N.D. Ga. 1984), rev'd on other grounds, 788 F.2d 1500 (11th Cir. 1986); Smith v. Se. Stages, Inc., 479 F. Supp. 593, 594–95 (N.D. Ga. 1977).

(DSMF ¶¶ 1-2).  The various teams staged their sanitation vehicles in a parking area before leaving at the end of their shifts.  (DSMF ¶ 3).  Plaintiff's routine upon returning to the parking area after completing his route often included streaming video from his personal tablet.  (DSMF ¶ 4).

On January 31, 2012, Plaintiff sat in his sanitation truck watching streaming video following his route.  (DSMF ¶ 5).  Plaintiff was parked across from the truck belonging to a co-worker, John Summerour,[2] and to the right of another truck belonging to another co-worker, Kamar Bailey, the latter of whom was seated in his truck.  (DSMF ¶¶ 8-9).  Plaintiff overheard Summerour speaking loudly.  (DSMF ¶¶ ). ¶ 4).  Plaintiff admitted that he had no basis for believing Summerour was speaking to him, (Deposition of Joseph F. Benton, III, dated Jan. 26, 2016 ("Benton Dep."), Doc. 28. pp. 44-45), and an investigation reached the same conclusion.  (Benton Dep., Ex. 4).

Following Summerour's comments, Bailey exited his truck and began arguing with Summerour.  (DSMF ¶ 12).  Another employee, Auburn Williams, entered the scuffle to prevent Bailey from fighting with Summerour, but the latter two appeared to part ways in order to obtain weapons.  (DSMF ¶¶ 12-13).  Plaintiff, meanwhile, exited his truck to get a better view of the fight.  (DSMF ¶ 15).

After the altercation, Bailey stated to Plaintiff that Summerour's words prior to the fight were aimed at Plaintiff, (DSMF ¶ 16), though Plaintiff had never been involved

---

[2] Summerour was not in a supervisory role relative to Plaintiff, but merely a co-worker.  (DSMF ¶ 18).

in any other incident with Summerour before or after that time (DSMF ¶ 17).

Plaintiff was aware of Atlanta's sexual harassment policy from the City's own handbook and the general civil service handbook. (DSMF ¶ 21). Plaintiff immediately reported the incident to his supervisors, and sent an email to the Atlanta Department of Human Resources ("HR"), requesting an investigation. (DSMF ¶¶ 19-20). HR immediately conducted an investigation into Plaintiff's complaint about Summerour. (DSMF ¶ 23; see also Benton Dep., Ex. 4). Plaintiff met with HR, and HR placed Plaintiff on paid administrative leave during during the formal investigation into the incident. (DMSF ¶¶ 23-24). The investigation resulted in discplinary action against Summerour, who was terminated, and three others. (DMSF ¶¶ 25-27). Plaintiff testified at Summerour's Civil Service Board hearing when Summerour appealed his termination for the conduct discovered during the investigation into Plaintiff's complaint; when Plaintiff returned to work, Summerour had been removed from the workplace. (DSMF ¶¶ 26-27).

Prior to the January 2012 incident, Plaintiff had already been warned that filming of the workplace and/or co-workers was not permitted without permission. (DMSF ¶ 29). During the investigation, it became apparent that Plaintiff had again filmed co-workers at work and during garbage routes. (DMSF ¶ 28). Because the investigation revealed – and Plaintiff admitted – that he continued to use a recorder to film interactions in the workplace in direct violation of the warning he previously received, Plaintiff was suspended for five days without pay. (DMSF ¶¶ 28-31). Following his suspension

11

without pay, Plaintiff filed his Charge on February 16, 2012. (DSMF ¶ 32). The following year, in July 2013, Plaintiff was caught having recorded a training session earlier that year, and having been previously warned and suspended for filming at work without permission, his employment was terminated. (DSMF ¶¶ 34-35). At the time, Plaintiff had also been suspended from driving due to multiple accidents in his sanitization vehicle in the prior two months. (DSMF ¶ 36). On appeal in December 2013, Plaintiff's discharge was upheld. (DSMF ¶ 37).

## LEGAL ANALYSIS

### I.   Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of asserting the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Apcoa, Inc. v. Fid. Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990).  The movant is not required, however, to negate its opponent's claim; the movant may discharge its burden by merely "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  After the movant has carried its burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence of specific facts showing that there is a genuine disputed issue for trial; the non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. Id. at 324

(quoting Fed. R. Civ. P. 56(e)).

While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1236 (11th Cir. 2003), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is material when it is identified as such by the controlling substantive law. Id. at 248. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 249-50. Thus, the Federal Rules mandate the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The non-movant's failure to offer proof of an essential element to her case renders all facts immaterial, thus entitling the

movant to judgment as a matter of law.  Id. at 323.[3]

## II.   Plaintiff's Claims Against Defendants Mendoza and Yancy[4]

The Eleventh Circuit has made it clear that "[t]he relief granted under Title VII is against the employer, not the individual employees whose actions would constitute a violation of the Act."  Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991); see also, Hinson v. Clinch Cnty Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (quoting Busby).  Thus, any suit brought pursuant to Title VII against an employee or supervisor in his or her individual capacity is "inappropriate," and subject to dismissal.  Busby, 931 F.2d at 772; see also, Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336, 1342 (N.D. Ga. 2009) (granting individual defendants' motion to dismiss); Canty v. Fry's Elecs., Inc., No. 1:09-cv-3508-WSD-LTW, 2010 WL 3516834, at *6 (N.D. Ga. Sept. 1, 2010) (same).  As a result, Plaintiff may only assert a claim under Title VII against his actual employer, which, on the basis of the facts alleged in Plaintiff's Complaint and set forth in Defendants' Statement of Material Facts, appears to have been at all relevant

---

[3]  The Federal Rules of Civil Procedure state that a party asserting that a fact is genuinely disputed must cite to specific materials in the record and a failure to do so allows the court to consider the fact as undisputed for purposes of the motion for summary judgment. Fed.R.Civ.P. 56(c)(1)(A), (e)(2). Similarly, the Northern District of Georgia's Local Rule 56.1(B) states that a district court will deem the movant's statement of material facts as admitted unless the non-movant's response "contain[s] individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts," and "directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number)."  LR 56.1(B)(2)a.(1), (2), NDGa.

[4]  Richard Mendoza was the Commissioner of Public Works and Yvonne Cowser Yancey was the Commissioner of Human Resources.  See Doc. 18.

14

times Defendant Atlanta.  Therefore, since all of Plaintiff's claims against Defendants Mendoza and Yancy are premised upon liability under Title VII, summary judgment should be **GRANTED** as to all of his claims against them.

### III.   Plaintiff's Hostile Work Environment Claim

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).  Although Title VII does not explicitly mention sexual harassment, courts have recognized that harassment which changes the terms or conditions of employment constitutes a violation of the Act.  See, e.g., Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986); Mendoza v. Borden, Inc., 195 F.3d 1238, 1244-45 (11th Cir.1999) (en banc).  An employer can be held responsible for sexually harassing conduct under Title VII under two alternative forms: quid pro quo sexual harassment and hostile work environment sexual harassment.  Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1244-46 (11th Cir. 2004); Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1315 (11th Cir. 1989) (citing Vinson, 477 U.S. 57; Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982)); see also Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000) ("Generally, sexual harassment comes in two forms: harassment that does not result in a tangible employment action (traditionally referred to as 'hostile work environment' harassment), and harassment that does result in a tangible employment action (traditionally referred to as 'quid pro quo' harassment)").

15

In his Complaint, Plaintiff alleged that Defendant Atlanta[5] has violated Title VII by subjecting him to the second form of harassment – a hostile work environment. Hostile work environment sexual harassment is when the harassment is so serious and pervasive that the harassment itself amounts to an alteration in the terms and conditions of the employee's employment.  Hulsey, 367 F.3d at 1245; see also Steele, 867 F.2d at 1316 (the harassment "'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive environment.'") (quoting Vinson, 477 U.S. at 65)).

To prove sexual or gender-based harassment under Title VII based upon a hostile work environment, a plaintiff must show that (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on his sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive work environment; and (5) a basis for holding the employer liable exists.  Hulsey, 367 F.3d at 1245; Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  In establishing these elements, a plaintiff must present concrete evidence in the form of specific facts, not just conclusory allegations and assertions.  Davis v. United States Postmaster Gen., 190 F. App'x 874, 877 (11th Cir. 2006).

In this case, Defendants argue Plaintiff cannot establish either the fourth or fifth

---

[5] Although Plaintiff's Complaint alleges that all Defendants are liable under this theory, for the reasons outlined in the section above, the Court will refer solely to Plaintiff's claims against Defendant Atlanta.

AO 72A
(Rev.8/82)

elements of a hostile work environment sexual harassment claim.  To establish the "severe or pervasive" element, a plaintiff must show not only that he subjectively perceived the working environment to be abusive, but also that a reasonable person would view the environment as hostile and abusive.  Miller, 277 F.3d at 1276; see also Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).  In evaluating whether the harassment was objectively hostile in this respect, the Court considers the totality of the circumstances, which includes among other things, "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  Id.

In this case, Plaintiff complains only of a single incident of harassing conduct, by a mere co-worker, which Plaintiff admitted he had no basis for believing was directed at him, and that in no way interfered with his job performance.  That single incident – a vulgar statement by a co-worker about having "sex, stuff with animals and with dead people and man pu**y," followed by a trouser drop,[6] is simply not objectively hostile in light of the factors above.

Defendants' citations provide apt comparisons.  Repeated vulgar pronouncements, even over the course of weeks, and/or frequent sexual comments, even when combined with some level of physical touching, have been held to be insufficiently severe and

---

[6] (See Benton Dep., pp. 34 et seq. (no indication that the co-worker, Summerour, physically exposed his genitalia; see also Benton Dep. Ex. 4, p. 4 (Plaintiff did not see Summerour pull down his pants or expose himself)).

pervasive.  See e.g., Corbitt, et al. v. Home Depot U.S.A., 573 F.3d 1223, 1241 (11th Cir. 2009); Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 584-85 (11th Cir. 2000); Gutherie v. Waffle House, Inc., 460 F. App'x. 803, 807 (11th Cir. 2012); Lockett v. Choice Hotels Int'l, Inc., 315 F. App'x 862, 863-67 (11th Cir. 2009); Otu v. Papa John's USA, Inc., 400 F. Supp. 2d 1315, 1327 (N.D. Ga. 2005); see also  Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999); Laincy v. Chatham Cnty. Bd. of Assessors, 520 F. App'x 780, 783 (11th Cir. 2013);  Henderson v. Waffle House, Inc., 238 F. App'x 499, 502 (11th Cir. 2007).  Only when combined with more egregious or objectional conduct, such as more extreme physical contact, conduct by supervisors, or conduct so frequent it interferes with job performance, will harassment be considered hostile.  See, e.g., Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000); Dees v. Johnson Controls World Servs., Inc., 168 F.3d 417, 418 (11th Cir. 1999); Smith v. Penfanis, 652 F. Supp. 2d 1308, 1328 (N.D. Ga. 2009).

Even if Plaintiff could have made out the severe and pervasive element, Defendants have presented a valid affirmative defense.  As noted above, to make out a case of hostile work environment sexual harassment, there must be a basis for holding the employer liable.  In order to establish a basis for holding Atlanta liable for a hostile work environment, Plaintiff must show that Atlanta had notice of the alleged harassment and failed to take immediate and appropriate corrective action.  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278-80 (11th Cir. 2002); see also Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d 1287, 1303-04 (11th Cir. 2007); Fleming v.

Boeing Co., 120 F.3d 242, 246 n. 4 (11th Cir. 1997); Cramer v. Bojangles Rests., Inc., No. 2:10-CV-0159-RWS-SSC, 2012 WL 716176, at *10 (N.D. Ga. Feb. 8, 2012), report and recommendation adopted, No. 2:10-CV-0159-RWS, 2012 WL 716028 (N.D. Ga. Mar. 6, 2012), aff'd, 498 F. App'x 885 (11th Cir. 2012).

In the present case, the evidence supports Atlanta's argument that it should not be held liable, since it has demonstrated that: it had a sexual harassment policy; Plaintiff was aware of the policy; Plaintiff utilized the policy; and Atlanta took immediate action the day following Plaintiff's complaint to begin an investigation that concluded approximately two weeks later and resulted in the termination of Summerour, with whom Plaintiff never again encountered in the workplace.  See Lockett, 315 F. App'x 862, 868.[7]

Accordingly, for both of the reasons outlined above, Plaintiff has not made out a claim for hostile work environment sexual harassment, and summary judgment should be **GRANTED** as to that claim.

---

[7] Plaintiff has not argued that Defendant Atlanta's response was not immediate and appropriate; even so, Plaintiff would need to identify significant shortcomings that do not appear in this case. See Goodstein v. Gunther Motor Co., No. 95-6678-CIV-UNGARO-BENAGES, 1996 WL 903950, at *11 (S.D. Fla. Sept. 12, 1996), aff'd, 135 F.3d 144 (11th Cir. 1998) (finding that in order to show the employer's response to a complaint of harassment was inadequate, "it is not enough for the plaintiff merely to point out ways in which she thinks the remedial actions could have been better or to point out how the remedial actions did not meet her expectations" but "[r]ather, the plaintiff must produce evidence of a 'significant shortcoming' in the employer's response in order to hold the employer liable under Title VII" (citations omitted)); see also Farley v. Am. Cast Iron Pipe Co., 115 F.3d 1548, 1555 (11th Cir. 1997) (noting that the court had "never stated . . . that a complainant in a discrimination action has a right to the remedy of her choice").

**IV.   Plaintiff's Retaliation Claim**

Title VII makes it unlawful for an employer to retaliate against an employee because he has (1) opposed any employment practice made an unlawful practice by Title VII (the opposition clause) or (2) "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause).  42 U.S.C. § 2000e-(3)(a); Mulkey v. Bd. of Comm'rs of Gordon Cnty., 488 F. App'x 384, 389 (11th Cir. 2012); Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010); Anduze v. Fla. Atl. Univ., 151 F. App'x 875, 878 (11th Cir. 2005); McShane v. United States Attorney Gen., 144 F. App'x 779, 787 (11th Cir. 2005).  In this case, Plaintiff contends that he was retaliated against when he was suspended following his complaint about Summerour, and also that he was retaliated against when he was terminated after filing an EEOC charge and participating in the subsequent investigation.

In the absence of direct evidence, as in the instant case, claims of retaliation pursuant to Title VII follow the McDonnell Douglas burden-shifting framework. Jackson v. Geo Group, Inc., 312 F. App'x 229, 233 (11th Cir. 2009); Goldsmith v. City of Atmore, 996 F.2d 1155, 1162-63 (11th Cir. 1993).  To make out a prima facie case of retaliation under Title VII, the plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action by the employer simultaneously with or subsequent to such protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action.  Crawford v. Carroll, 529 F.3d

961, 970 (11th Cir. 2008).

With regard to Plaintiff's internal complaint about Summerour's conduct, Plaintiff fails to establish the first element of a prima facie case.[8] An employee is protected by the opposition clause under Title VII if he has opposed an employment practice based on a good faith, reasonable belief that the employment practice violated Title VII. Bryant v. United States Steel Corp., 428 F. App'x 895, 897-98 (11th Cir. 2011); Anduze, 151 F. App'x at 878; Little v. United Techs., 103 F.3d 956, 960 (11th Cir. 1997). That is, the employee not only must show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1213 (11th Cir. 2008). Whether the employee's belief was reasonable is measured against existing substantive law. Clover, 176 F.3d at 1351 (explaining that, to determine whether an employee's belief is objectively reasonable, courts consider existing substantive law); Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 n.1 (11th Cir. 1998). "Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no

_____

[8] More expansive protection is available to an employee who participates in adjudicative types of proceedings conducted by the federal government and its agencies. EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000). Plaintiff, however, does not contend that he filed his Charge until after he was suspended; thus, Plaintiff is not proceeding under the participation clause with regard to that adverse employment action. McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008), cert. den'd, McCann v. Cochran, 555 U.S. 944 (2008). Instead, Plaintiff must provide evidence that he engaged in protected activity under the opposition clause. Total Sys. Servs., 221 F.3d at 1174.

decision of this Court or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable." Butler, 536 F.3d at 1214.  Furthermore, plaintiffs may not stand on their ignorance of the substantive law to argue that their belief was reasonable.  Butler, 536 F.3d at 1214, citing Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1317 (11th Cir. 2002).

Although the conduct opposed need not be actual actionable sexual harassment or discrimination, it must be close enough to support an objectively reasonable belief that it is.  Clover, 176 F.3d at 1351 ("[T]he conduct opposed [need not] actually be [racial or retaliatory discrimination], but it must be close enough to support an objectively reasonable belief that it is.").  Where the action at issue falls well-short, the Eleventh Circuit has not considered the employee's complaint to be objectively reasonable. Howard v. Walgreen Co., 605 F.3d 1239, 1244-45 (11th Cir. 2010).

Summerour's conduct during the single incident witnessed by Plaintiff was not sufficient to support an objectively reasonable belief in Plaintiff that he had been subjected to an unlawful sexually hostile working environment.  As discussed above, established precedent shows that similar isolated incidents do not constitute a sexually hostile work environment.  See Corbitt, 573 F.3d at 1241; Gupta, 212 F.3d at 584-85 ; Gutherie, 460 F. App'x. at 807; Lockett, 315 F. App'x at 863-67; Otu, 400 F. Supp. 2d at 1327.  In addition, courts have held that similar incidents fall short from being a hostile work environment that Plaintiff's belief was not objectively reasonable.  See Little, 103 F.3d at 960 (holding that employee's opposition to co-worker's single racist

22

remark was not protected opposition to unlawful employment practice because no jury could conclude that a co-worker's racist remark amounted to an unlawful employment practice); Clover, 176 F.3d at 1351 (holding that female employee did not engage in protected opposition against sexual harassment when she complained that the senior manager frequently visited her work area without a business purpose, called her on her personal beeper during work hours, called her out to the hallway to talk, but darted behind the door out of sight if she saw him, hung up on anyone else who answered the phone, and flirted with her); see also Laincy, 520 F. App'x at 783 (holding that district court did not err in concluding that employee did not engage in protected activity because his belief that his coworker's three allegedly harassing comments constituted an unlawful employment practice was not objectively reasonable); Henderson, 238 F. App'x at 502 (finding that female employee's belief that manager was sexually harassing her was not objectively reasonable and could not form the basis for protected opposition activity even though manager pulled her hair, called her "Dolly," told her she looked like she was going to burst when she wore a new shirt, told her "they did not make aprons big enough for boobs like [hers]," and told her not to stand so close to him because she made him nervous and he would get in trouble if he told her why).  Accordingly, summary judgment should be **GRANTED** as to Plaintiff's retaliation claim based upon his suspension prior to filing his Charge.

With regard Plaintiff's termination, although Plaintiff can establish that he engaged in protected activity, Plaintiff cannot establish a causal connection between his

protected activity and his termination.  To establish the requisite causal connection, Plaintiff must, at a minimum, show that the decisionmaker was aware of his protected conduct, and that the protected activity and the adverse action were not wholly unrelated. McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008), cert. den'd McCann v. Cochran, 555 U.S. 944 (2008).  Plaintiff, however, must show the decisionmaker's awareness with more than curious timing coupled with speculative theories.  Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997) (holding that "[i]n the modern era of summary judgment, the plaintiff is effectively required to put forth her entire case at summary judgment to persuade the court that a reasonable fact finder could rule in the plaintiff's favor"and therefore, the plaintiff must set forth "significant probative evidence regarding the identity, authority and knowledge" of the decisionmaker.).  Here, Plaintiff has not set forth any non-speculative evidence other than the fact that his termination followed his protected activity; however, the temporary proximity – more than a year – is too attenuated to alone support the causal connection element.  Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough).

Furthermore, even assuming Plaintiff could establish the causal link between his EEOC activity and his termination, Plaintiff's retaliatory termination claim still fails because Plaintiff cannot raise a genuine issue of material fact as to whether the reason given for his termination was pretextual.  Once a plaintiff makes out a prima facie case,

24

"the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999). "If the defendant offers legitimate reasons, the presumption of retaliation disappears," and "[t]he plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." Id.

A plaintiff raises a genuine issue of material fact concerning pretext if the plaintiff casts sufficient doubt on the defendant's proffered non-retaliatory reasons to permit a reasonable factfinder to conclude that the proffered reasons were not actually what motivated its conduct. McCann, 526 F.3d at 1375-76. This may be accomplished either by directly persuading the court that a retaliatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993). In doing so, the court evaluates whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." McCann, 526 F.3d at 1375-76; Combs v. Plantation Patterns, Inc., 106 F.3d 1519, 1538 (11th Cir. 1997). A plaintiff must meet each of the employer's legitimate reasons "head on" and not simply quarrel with the wisdom of the reasons. Chapman, 229 F.3d at 1030; see also Univ. Tex. Sw. Med. Ctr. v. Nassar, — U.S. —, 133 S. Ct. 2517, 2532, 2534 (2013) (explaining that a plaintiff making a

retaliation claim under Title VII must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer and that to allow a cause of action for retaliation claims based on the notion that retaliation was a mere motivating factor would "make it far more difficult to dismiss dubious claims at the summary judgment stage"); Crawford v. City of Fairburn, 482 F.3d 1305, 1308-09 (11th Cir. 2007) (holding that even though plaintiff could point to evidence of retaliatory intent and may be able to show that one of defendant's reasons for terminating plaintiff was evidence of illegal retaliation, the plaintiff could not meet his burden of showing pretext on summary judgment because he was unable to raise jury question as to whether each of the other reasons offered by defendant were pretextual).

In this case, Plaintiff was warned before the Summerour incident not to film in the workplace. After the Summerour incident, it was discovered that Plaintiff, despite the previous warning, continued to film in the workplace. As a result of Plaintiff's failure to heed Atlanta's warning, he was suspended. When it was discovered later that the filming continued, Plaintiff was terminated as a result. Defendants have thus provided a legitimate non-discriminatory reason for Plaintiff's termination, and Plaintiff has offered no evidence that the proffered reasons were not actually what motivated Atlanta's decision to terminate his employment.

Accordingly, summary judgment should be **GRANTED** with regard to both of Plaintiff's claims for retaliation.

## **CONCLUSION**

26

Based on the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED**. (Doc. 29). This being a final Report and Recommendation and there are no other matters pending before this Court, the Clerk is **DIRECTED** to terminate the reference to the undersigned.

**SO ORDER AND REPORTED AND RECOMMENDED**, this   11   day of July, 2016.

/s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

27