IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOSEPH F. BENTON, III,

    **Plaintiff,**

  **v.**

CITY OF ATLANTA, RICHARD
MENDOZA, Commissioner of
Public Works, and YVONNE
COWSER YANCY, Commissioner
of Human Resources,

    **Defendants.**

1:14-cv-2799-WSD

## OPINION AND ORDER

This matter is before the Court on Magistrate Judge Linda T. Walker's Final

Report and Recommendation [34] ("R&R"), recommending that the Court grant

Defendants City of Atlanta ("City of Atlanta" or the "City"), Richard Mendoza

("Mendoza") and Yvonne Cowser Yancy's ("Yancy") (together, "Defendants")

Motion for Summary Judgment [29].  Also before the Court is Plaintiff

Joseph F. Benton, III's ("Plaintiff") Objections [38] to the R&R.[1]

---

[1]  Plaintiff is proceeding *pro se*.  "A document filed *pro se* is to be liberally construed."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted).

# I.     BACKGROUND

## A.     Facts

### 1.     January 31, 2012 Incident

In January 2012, Plaintiff worked for City of Atlanta as an Environmental Equipment Operator.  (Defendants' Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment [29.1] ("Statement of Undisputed Material Facts" or "DSMF") ¶ 1).  Plaintiff drove a sanitation truck along a garbage collection route, carrying a team of laborers who placed the garbage in the truck.  (DSMF ¶¶ 1-2).  The sanitation truck teams staged their sanitation vehicles in a parking area before leaving at the end of their shifts.  (DSMF ¶ 3).  Upon returning to the parking area after completing his route, Plaintiff often streamed videos on his personal tablet.  (DSMF ¶ 4).

On January 31, 2012, after completing his route, Plaintiff sat in his sanitation truck watching a television show on his tablet.  (DSMF ¶¶ 5-6).  Plaintiff was parked across from a sanitation truck belonging to co-worker John Summerour ("Summerour"),[2] and to the right of another truck belonging to co-worker Kamar Bailey ("Bailey").  (DSMF ¶¶ 8-9).  Bailey was seated in his truck.  (DSMF ¶ 9).  Plaintiff overheard Summerour speaking loudly "about him having

---

[2]     Summerour was not in a supervisory role over Plaintiff.  (DSMF ¶ 18).

sex, stuff with animals and with dead people and man pussy . . . and he dropped his trousers." (DSMF ¶ 7; Deposition of Joseph F. Benton, III, dated Jan. 26, 2016 [28] ("Benton Dep."), at 35; Benton Dep., Ex. 4, at 4). Plaintiff did not perceive that Summerour's comments were directed at him, (DSMF ¶ 10), admits he had no basis for believing Summerour was speaking to him, (Benton Dep. at 44-45; see also Benton Dep., Ex. 4, at 12), and did not see Summerour pull down his pants or expose himself, (Benton Dep., Ex. 4, at 4).

Following Summerour's comments, Bailey exited his truck and began arguing with Summerour. (DSMF ¶ 11). Another employee, Auburn Williams, entered the scuffle to prevent Bailey from fighting with Summerour, but Bailey and Summerour appeared to leave to obtain weapons. (DSMF ¶¶ 12-14). Plaintiff exited his truck to get a better view of the fight. (DSMF ¶ 15).

After the altercation, Bailey told Plaintiff that Summerour's words prior to the fight were aimed at Plaintiff. (DSMF ¶ 16). Plaintiff had not previously, and has not since, been involved in an incident with Summerour. (DSMF ¶ 17).

Plaintiff immediately reported the incident to his supervisors and sent an email to the City of Atlanta's Department of Human Resources ("HR"), requesting an investigation. (DSMF ¶¶ 19-20). HR immediately met with Plaintiff and placed him on paid administrative leave while they investigated his complaint.

(DMSF ¶¶ 22-24; see also Benton Dep., Ex. 4).  The investigation resulted in disciplinary action against Summerour, who was terminated, and three (3) other employees, including Plaintiff.  (DMSF ¶¶ 25, 27).  Plaintiff testified at Summerour's Civil Service Board hearing after Summerour appealed his termination.  (DSMF ¶ 26).  When Plaintiff returned to work, Summerour had been removed from the workplace.  (DSMF ¶ 27).

2.     Plaintiff's Termination

Plaintiff often video-recorded interactions in the workplace.  (DMSF ¶ 30; Benton Dep. at 88:6-8).  Prior to the January 31, 2012, incident, Plaintiff's supervisor, Douglas Raikes, warned Plaintiff that he was prohibited from filming in the workplace.  (DMSF ¶ 29; Benton Dep, Ex. 4, at 5, 9).  The investigation into Summerour's conduct revealed that Plaintiff continued to film co-workers in the workplace and during garbage collection routes.  (DMSF ¶ 28; Benton Dep., Ex. 4, at 5, 11).  As a result of this prohibited filming, Plaintiff was suspended for five (5) days without pay.  (DMSF ¶ 31; Benton Dep., Exs. 6, 10).

On February 16, 2012, following his suspension without pay, Plaintiff filed, with the Equal Employment Opportunity Commission ("EEOC"), a discrimination charge against City of Atlanta.  (DSMF ¶ 32).  The charge stated:

4

> On January 31, 2012, I was subjected to a sexually hostile work
> environment, which I immediately reported to my supervisors and
> which was subsequently reported to the Human Resources Manager
> and Safety Officer.  On February 1, 2012 I was placed on
> administrative leave with pay.  On February 15, 2012, I was accused
> of recording the sexually hostile work environment, which I deny, and
> was suspended without pay for five days.
>
> The reason provided for the administrative leave was pending an
> investigation.  The reason provided for the suspension was that I
> recorded the sexually hostile work environment.
>
> I believe that I have been discriminated against because of my sex
> (male) and retaliated against for having engaged in a protected
> activity, in violation of Title VII of the Civil Rights Act of 1964, as
> amended.

(DSMF ¶ 33; Compl. at 15).

A year later, on February 7, 2013, Plaintiff recorded a training session at the

City Department of Public Works' Lakewood Facility.  (DSMF ¶ 34).  On

July 22, 2013, City of Atlanta terminated Plaintiff's employment for filming in the

workplace after prior warnings and a suspension.  (DSMF ¶ 35; Benton Dep.,

Ex. 12).  At the time of his termination, Plaintiff was serving a driving suspension

after having two (2) accidents in his sanitation vehicle, in May and June 2013.

(DSMF ¶ 36).  On January 6, 2014, the Civil Service Board, on appeal, upheld

Plaintiff's discharge.  (DSMF ¶ 37; Benton Dep., Ex. 8).

B.   <u>Procedural History</u>

On May 27, 2014, after a referral from the EEOC, the United States

Department of Justice ("DOJ") declined to file suit on Plaintiff's discrimination

charge.  (Compl. at 10).  On June 5, 2014, Plaintiff received notice, from the DOJ,

of his right to sue within ninety (90) days.  (Compl. at 4, 10).  On August 29, 2014,

Plaintiff, proceeding *pro se*, filed his Application for Leave to Proceed

*in Forma Pauperis* [1] ("Application"), attaching his Complaint [1.1].  On

September 17, 2014, the Magistrate Judge granted [2] Plaintiff's Application and

Plaintiff's Complaint [3] was entered.  The Complaint asserts claims, under

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5, for

retaliation and a sexually hostile work environment.  (Compl. ¶¶ 1, 12-13).

Plaintiff seeks the reinstatement of his employment, back pay, $2,500,000 in

damages, and litigation costs and fees.  (Compl. at 8).

On May 12, 2015, the Magistrate Judge issued her Notice to Pro Se

Plaintiff [17] ("Notice"), advising Plaintiff that he must comply with the Local

Rules and the Federal Rules of Civil Procedure.  The Notice advised Plaintiff that a

motion is deemed unopposed where the nonmoving party does not file a response

within the time allotted.  <u>See</u> LR 7.1(B), NDGa.  The Notice further advised

Plaintiff that, on a motion for summary judgment, Plaintiff's failure to controvert

6

Defendants' statement of material facts would be taken as an admission of those facts.  See LR 56.1(B)(2), NDGa.  On November 24, 2015, the Magistrate Judge issued her Order on Joint Motion to Extend Time for Filing Dispositive Motions [25], listing the deadlines for dispositive motions and responses.  On November 24, 2015, the Magistrate Judge issued her Scheduling Order and Guidelines for Discovery and Summary Judgment Practice [26].  The Magistrate Judge provided detailed instructions for summary judgment practice, explained the rules governing statements of undisputed material facts, and warned that Plaintiff's failure to comply could result in sanctions, including dismissal of his Complaint.

On February 29, 2016, Defendants timely filed their Motion for Summary Judgment, attaching their Statement of Undisputed Material Facts.  Defendants argue that summary judgment should be granted on Plaintiff's claims against Defendants Mendoza and Yancy because individuals are not liable under Title VII. Defendants also argue that Plaintiff's hostile work environment claim fails because (1) Plaintiff has not established a sufficiently severe or pervasive hostile work environment, and (2) City of Atlanta took immediate action to remedy Plaintiff's concerns about the workplace.  Finally, Defendants argue Plaintiff cannot establish a prima facie case of retaliation under Title VII because Plaintiff (1) has not offered evidence that he opposed a practice he reasonably believed was made

unlawful under Title VII, and (2) cannot establish that his participation in an

activity protected by Title VII was the reason for any adverse employment action.

On March 1, 2016, the Clerk of Court mailed to Plaintiff a Notice to Respond to

Summary Judgment Motion [30].  Plaintiff did not file a response to the summary

judgment motion and Defendant's Motion for Summary Judgment is deemed

unopposed.  See LR 7.1(B), NDGa; cf. Case v. Eslinger, 555 F.3d 1317, 1329

(11th Cir. 2009) ("A party 'cannot readily complain about the entry of a summary

judgment order that did not consider an argument [he] chose not to develop for the

district court at the time of the summary judgment motions.'" (quoting Johnson v.

Bd. of Regents, 263 F.3d 1234, 1264 (11th Cir. 2001)));

Cit Bank, N.A. v. Andrews, No. 2:15-cv-0091, 2016 WL 3439859, at *8 (N.D.

Ala. June 23, 2016) ("A party who aspires to oppose a summary judgment motion

must spell out his arguments squarely and distinctly, or else forever hold his

peace." (quoting Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260

(1st Cir. 1999) (internal quotation marks omitted))).

On July 11, 2016, the Magistrate Judge issued her R&R, recommending that

Defendants' Motion for Summary Judgment be granted.  On July 20, 2016,

Plaintiff moved [36] for an extension of time to respond to the R&R.  On

July 22, 2016, the Court granted [37] Plaintiff's motion and permitted him to file,

on or before August 1, 2016, his objections to the R&R.  On August 1, 2016,

Plaintiff filed his Objections.

## II.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

Summary judgment is appropriate where the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter

of law.  See Fed. R. Civ. P. 56.  "An issue of fact is material if it 'might affect the

outcome of the suit under the governing law.'"  W. Grp. Nurseries, Inc. v. Ergas,

167 F.3d 1354, 1360 (11th Cir. 1999) (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986)).  "An issue of fact is genuine 'if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party.'"  Id. at 1361

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment bears the initial burden of

demonstrating the absence of a genuine dispute as to any material fact.

Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  "The

movant[] can meet this burden by presenting evidence showing there is no dispute

of material fact, or by showing that the nonmoving party has failed to present

evidence in support of some element of its case on which it bears the ultimate

burden of proof." Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999). Once the moving party has met this burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Id. at 1282. The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

The party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Id. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282.

"If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted." Herzog, 193 F.3d at 1247; see Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (a party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict" (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997) (internal quotation marks omitted))).

B.    Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  See Garvey v. Vaughn, 993 F.2d 776,

11

779 n.9 (11th Cir.  1993); <u>United States v. Slay</u>, 714 F.2d 1093, 1095 (11th Cir.

1983) (per curiam).

Plaintiff objects that the R&R omits material facts because it fails to state

(1) that a "medical issue" prevented him from working as a laborer after his

driving privileges were suspended, (2) that his employer "refused to acknowledge

this fact," (3) that his employment was terminated about a month after he filed a

disability charge with the EEOC, and (4) that his disability charge was later

"upgraded" to a retaliation charge.  (Objections at 1).  These objections are

meritless for several reasons.  First, Plaintiff does not explain the significance of

these alleged facts to his sexually hostile work environment and retaliation claims.

Second, these facts are immaterial because Plaintiff does not allege disability

discrimination, he asserts claims only under Title VII, and "Title VII does not

proscribe disability discrimination, nor does it give protected status to disabled

persons." <u>Harris v. Potter's House Family & Children Treatment Ctr.</u>, No. 1:13-

cv-2563, 2013 WL 5436775, at *1 (N.D. Ga. Sept. 27, 2013) (quoting

<u>Lewis v. Zilog, Inc.</u>, 908 F.Supp. 931, 953 n.11 (N.D. Ga. 1995)) (internal

quotation marks omitted); (<u>see</u> Compl. at 1-2, 6-8).  Third, as Plaintiff repeatedly

was warned, compliance with Local Rule 56.1 is the "only permissible way . . . to

establish a genuine issue of material fact." <u>Reese v. Herbert</u>, 527 F.3d 1253, 1268

(11th Cir. 2008).  Plaintiff's objections are overruled.

Plaintiff's other objections do not have merit, and are conclusory and vague.[3]  The Court reviews the R&R for plain error because Plaintiff's objections are "[f]rivolous, conclusive, or general" and do not "specifically identify those findings objected to."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).

## III.  DISCUSSION

### A.  Undisputed Material Facts

A movant for summary judgment must provide a "separate, concise, numbered statement of the material facts to which the movant contends there is no

---

[3]     Plaintiff asserts, without explanation, the following conclusory objections: (1) "My rights as an employee and citizen have been violated and my rights were taken away," (2) "My employer did not follow rules for investigated [sic] my charge of Sexual Harassment," (3) "My employers did not follow the steps for adverse action against an employee," and (4) "I have endured a hostile workplace since January 31, 2012."  (Objections at 2).  Plaintiff also asserts that (1) he was unable to obtain certain (unspecified) documents before filing his objections, (2) he did not depose any witnesses due to costs, and (3) his "defense is limited" because he is not a "legal expert."  (Objections at 2).  These do not constitute specific objections to any portion of the R&R and do not excuse Plaintiff's failure to respond to the Motion for Summary Judgment after being repeatedly warned about the consequences of not filing a response.  Plaintiff also was granted an extension of time to file his objections, and did not request a further extension.  Finally, Plaintiff attaches to his Objections approximately fifty (50) pages of documents, the relevance of which he does not coherently explain.  The Court addresses below Plaintiff's objection, construed liberally, that he was suspended for video-recording the incident on January 31, 2012.

genuine issue to be tried."  LR 56.1(B)(1), NDGa.  The respondent must then file a response to the movant's statement:

> (1)    This response shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts.

> (2)    This Court will deem each of the movant's facts as admitted unless the respondent:  (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).

LR 56.1(B)(2)(a), NDGa.

Compliance with Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact" in response to the moving party's assertion of undisputed facts.  Reese, 527 F.3d at 1268; see Hampton v. Atzert, 590 F. App'x 942, 944 (11th Cir. 2014) ("[A] district court will accept each of the movant's facts admitted at summary judgment unless the nonmovant directly refutes these facts with concise responses.").  "The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in

14

the movant's statement." Reese, 527 F.3d at 1268; cf. Johnson v. City of Fort Lauderdale, Fla., 126 F.3d 1372, 1373 (11th Cir. 1997) ("[W]e are not obligated to cull the record ourselves in search of facts not included in the statements of fact."); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001) (courts need not "comb the record" looking for evidence to establish a party's contentions on summary judgment); Carolina Acquisition, LLC v. Double Billed, LLC, 627 F. Supp. 2d 1337, 1340 (S.D. Fla. 2009) ("Federal judges are not archaeologists . . . . We possess neither the luxury nor the inclination to sift through that mound of obfuscation in hopes of finding a genuine issue of material fact to deny summary judgment."); Grisham v. Phillip Morris, Inc., 670 F. Supp. 2d 1014, 1044 (C.D. Cal. 2009) ("Plaintiff is misguided in his apparent belief that it can defeat summary judgment through a conclusory reference to its voluminous submissions."); Pries v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007) ("Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions.").

The Court must then review the movant's statement of undisputed facts and ensure—by, "[a]t the least, . . . review[ing] all of the evidentiary materials submitted in support of the motion for summary judgment"—that the movant's

statement of facts is supported.  <u>Reese</u>, 527 F.3d at 1269 (quoting

<u>United States v. One Piece of Real Property</u>, 363 F.3d 1099, 1101-02 (11th Cir.

2004)) (internal quotation marks omitted).  "The Court will not consider any fact:

(a) not supported by a citation to evidence (including page or paragraph number);

(b) supported by a citation to a pleading rather than to evidence; (c) stated as an

issue or legal conclusion; or (d) set out only in the brief and not in the movant's [or

respondent's] statement of undisputed facts."  LR 56.1B(1), NDGa.

On February 29, 2016, Defendants filed their Statement of Undisputed

Material Facts, to which, in violation of the Local Rules, Plaintiff did not respond.

The Magistrate Judge deemed undisputed the facts asserted in Defendants'

Statement of Undisputed Material Facts and, having conducted both a plain error

and de novo review of the record, the Court agrees.  (R&R at 7); <u>see</u>

LR 56.1(B)(2)(a)(2), NDGa.  Plaintiff's *pro se* status does not prevent this

conclusion, particularly given the Magistrate Judge's warnings to comply with the

Local Rules.  <u>See</u> <u>Albra v. Advan, Inc.</u>, 490 F.3d 826, 829 (11th Cir. 2007)

("[A]lthough we are to give liberal construction to the pleadings of *pro se* litigants,

'we nevertheless have required them to conform to procedural rules.' (quoting

<u>Loren v. Sasser</u>, 309 F.3d 1296, 1304 (11th Cir. 2002))); <u>Moon v. Newsome</u>, 863

F.2d 835, 837 (11th Cir. 1989) (noting that a *pro se* party "is subject to the relevant

law and rules of court, including the Federal Rules of Civil Procedure," and may

be sanctioned "for failure to comply with court orders"); Ephraim v. Pantry, Inc.,

899 F. Supp. 2d 1205, 1206 (N.D. Ala. 2012) ("Although [*pro se* plaintiff] must be

cut some slack, this does not mean that she is excused from the rules that control

decision-making under Rule 56, Fed. R. Civ. P."); Williams v. Aircraft Workers

Worldwide, Inc., 832 F. Supp. 2d 1347, 1351 (S.D. Ala. 2011) ("[P]laintiff's

*pro se* status does not entitle her to special treatment on summary judgment, nor

does it exempt her from compliance with Rule 56 and the orders of this

Court. . . .  [Plaintiff's] decision not to proffer argument, evidence or authority in

response to defendant's Motion for Summary Judgment is at her peril.");

Mack-Muhammad v. Cagle's Inc., No. 4:08-cv-11, 2010 WL 55912, at *1 (M.D.

Ga. Jan. 4, 2010), ("[*Pro se* plaintiff] did not respond to Defendants' statement of

material facts.  Accordingly, the Court deems Defendants' statement of undisputed

facts to be admitted pursuant to Local Rule 56." (internal citation omitted)), aff'd

sub nom. MackMuhammad v. Cagle's Inc., 379 F. App'x 801 (11th Cir. 2010);

Brandon v. Lockheed Martin Aeronautical Sys., 393 F. Supp. 2d 1341, 1358 (N.D.

Ga. 2005) ("[P]ro se litigants are still required to conform to the procedural

rules."); cf. Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990) ("[A] *pro se*

litigant does not escape the essential burden under summary judgment standards of

establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.").

In deciding this summary judgment motion, the Court adopts the facts stated in the R&R, which were largely derived from Defendant's Statement of Undisputed Material Facts.  The parties do not argue that these facts are incorrect[4] and, having reviewed the record, the Court finds that they are supported by the evidentiary materials in this case.  See Reese, 527 F.3d at 1269

**B.**     **Plaintiff's Claims against Defendants Mendoza and Yancy**

"The relief granted under Title VII is against the employer, not the individual employees whose actions would constitute a violation of the Act." Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991); see Hinson v. Clinch Cnty Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000).  Any Title VII claim against an employee or supervisor in his or her individual capacity is "inappropriate" and subject to dismissal.  Busby, 931 F.2d at 772; see Canty v. Fry's Elecs., Inc., No. 1:09-cv-3508, 2010 WL 3516834, at *6 (N.D. Ga. Sept. 1, 2010); Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336, 1342 (N.D. Ga. 2009).  The Magistrate Judge found that, because Plaintiff was

---

[4]     Although Plaintiff objects that the R&R omits certain facts—an argument already addressed and rejected by the Court—he does not argue that any specific facts in the R&R are wrong.

employed by Defendant City of Atlanta, summary judgment is required on Plaintiff's claims against Defendants Mendoza and Yancy.  (R&R at 14-15).  The Court finds no plain error in this finding.[5]

C.     Plaintiff's Sexually Hostile Work Environment Claim

Plaintiff claims that, because of the incident involving Summerour on January 31, 2012, he "was subjected to a sexually hostile work environment" in violation of Title VII.  (Compl. at 1, 6, 15).  To establish a prima facie hostile work environment claim under Title VII, a plaintiff must show:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Miller, 277 F.3d at 1275; see Lara v. Raytheon Tech. Serv. Co., LLC, 476 F. App'x 218, 220-221 (11th Cir. 2012).  To establish these elements, a plaintiff must present concrete evidence of specific facts.  Davis v. United States Postmaster Gen., 190 F. App'x 874, 877 (11th Cir. 2006).

To demonstrate the fourth prima facie element, a plaintiff must show that his

---

[5]     Plaintiff's claims against Mendoza and Yancy also fail for the reasons explained below.

work environment was "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). "To evaluate the objective severity of the alleged harassment, [courts] look to: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Lara, 476 F. App'x at 221. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted).

Plaintiff's hostile work environment claim is based on a single statement made by a co-worker about having "sex, stuff with animals and with dead people and man pussy," whereupon the co-worker dropped his trousers. Plaintiff did not contemporaneously perceive this remark to be directed at him, admitted he did not have a basis to believe the comment was directed at him, did not see Summerour pull down his pants or expose himself, and the conduct did not interfere with Plaintiff's job performance. (See Benton Dep. at 34 *et seq.* (no indication that the

20

co-worker, Summerour, physically exposed his genitalia); Benton Dep., Ex. 4, at 4

(Plaintiff did not see Summerour pull down his pants or expose himself)).  The

Magistrate Judge found that this isolated incident was not "sufficiently severe or

pervasive to alter the conditions of [his] employment and create an abusive

working environment."  Harris, 510 U.S. at 21 (internal citations and quotation

marks omitted); (R&R at 17).  The Court finds no plain error in this finding.  Cf.

Guthrie v. Waffle House, Inc., 460 F. App'x 803, 804-05, 807-08 (11th Cir. 2012)

(finding insufficient "a few dozen" vulgar comments or actions, including physical

touching, over eleven months); Latrece Lockett v. Choice Hotels Int'l, Inc., 315 F.

App'x 862, 866-67 (11th Cir. 2009) (finding insufficient frequent vulgar remarks

and multiple touching incidents over the course of four months);

Mendoza v. Borden, Inc., 195 F.3d 1238, 1247 (11th Cir. 1999) (en banc) (finding

insufficient "'constant' following and staring," sexual comments, physical

touching, and suggestive gestures).

Plaintiff also fails to establish the fifth prima facie element of a hostile work

environment claim, which requires a plaintiff to show his employer is vicariously

or directly liable for the harassment.  An employer is vicariously liable for a hostile

environment "created by a supervisor with immediate (or successively higher)

authority over the employee."  Miller, 277 F.3d at 1278 (quoting Faragher, 524

U.S. at 807) (internal quotation marks omitted).  "Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action."  Id.

The alleged perpetrator here is Plaintiff's co-employee, not a supervisor, and vicarious liability does not apply.  The Magistrate Judge found that the City of Atlanta also is not directly liable for Summerour's alleged harassment because the City immediately investigated Plaintiff's complaint, terminated Summerour's employment after the two-week investigation concluded and, when Plaintiff returned to work after paid administrative leave, the City had removed Summerour from the workplace.  (R&R at 19).  The Court finds no plain error in the Magistrate Judge's finding that Plaintiff has not established a hostile work environment claim. Defendants are entitled to summary judgment on Plaintiff's sexually hostile work environment claim.

D.    Plaintiff's Retaliation Claim

Plaintiff claims City of Atlanta suspended him in retaliation for complaining internally about the Summerour incident on January 31, 2012.  (Compl. at 6-7). Plaintiff also claims the City terminated his employment in retaliation for filing an

22

EEOC charge and participating in the subsequent investigation.  (Compl. at 6).[6]

Under Title VII, it is unlawful for an employer to retaliate against an employee because the employee (1) "has opposed any practice made an unlawful practice by [Title VII]" or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of Title VII retaliation, "a plaintiff must show that:  (1) [he] engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression."  Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998); see Watkins v. Sec'y Dep't of Homeland Sec., 401 F. App'x 461, 467 (11th Cir. 2010); Dixon v. The Hallmark Companies, Inc., 627 F.3d 849, 856 (11th Cir. 2010).

Where, as here, the plaintiff lacks direct evidence of retaliation, he may rely on circumstantial evidence under the burden-shifting framework of McDonnell

---

[6]     In his Objections, Plaintiff suggests that, on June 17, 2013, he filed a disability charge with the EEOC for which he suffered retaliation.  (See Objections at 1).  As explained above, these allegations are immaterial because Plaintiff does not allege disability discrimination, asserts claims only under Title VII, and "Title VII does not proscribe disability discrimination, nor does it give protected status to disabled persons."  Harris, 2013 WL 5436775, at *1 (quoting Lewis v. Zilog, Inc., 908 F.Supp. 931, 953 n.11 (N.D. Ga. 1995)) (internal quotation marks omitted); (see Compl. at 1-2, 6-8).

Douglas Corp. v. Green, 411 U.S. 792 (1973).[7]  See Watkins, 401 F. App'x at 466.

"Under this framework, when the plaintiff presents only circumstantial evidence of

a retaliatory motive, the plaintiff bears the burden to present evidence of each

element of his prima facie case.  If the plaintiff does so, the burden shifts to the

employer to proffer a non-retaliatory reason for the adverse action, after which the

burden shifts back to the plaintiff to show that the reason is pretext for retaliatory

conduct."  Bush v. Raytheon Co., 373 F. App'x 936, 940 n.6 (11th Cir. 2010)

(internal citation omitted).

       To establish the first prima facie element in a claim based on opposition to

an unlawful employment practice, plaintiff must show he opposed an employment

practice based on a good faith, reasonable belief that the employment practice

violated Title VII.  Bryant v. United States Steel Corp., 428 F. App'x 895, 897-98

(11th Cir. 2011); see Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th

Cir. 1999); Berman v. Orkin Exterminating Co., Inc., 160 F.3d 697, 702 (11th

---

[7]       Direct evidence establishes retaliation without any inference or presumption.
See Burke-Fowler v. Orange Cty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).
"Only the most blatant remarks whose intent could be nothing other than to
discriminate constitute direct evidence."  Clark v. Coats & Clark, Inc., 990 F.2d
1217, 1223 (11th Cir. 1993).  Evidence that merely "suggests" discrimination,
Earley v. Champion Intern. Corp., 907 F.2d 1077, 1081-82 (11th Cir. 1990), or that
is subject to more than one interpretation, see Harris v. Shelby County Bd. of
Educ., 99 F.3d 1078, 1083 n.2 (11th Cir. 1996), does not constitute direct evidence.

Cir.1998) ("In order to state a retaliation claim, the plaintiff need only show that he had a 'reasonable belief' that an unlawful employment practice was occurring, and is not required to show that the employer actually engaged in an unlawful employment practice."); <u>Little v. United Tech. Carrier Transicold Div.</u>, 103 F.3d 956, 960 (11th Cir. 1997).  "[T]he conduct opposed [need not] actually be sexual harassment, but it must be close enough to support an objectively reasonable belief that it is."  <u>Clover</u>, 176 F.3d at 1351.

Given the high standard for establishing a hostile work environment under Title VII, the Magistrate Judge found that Summerour's isolated conduct did not support an objectively reasonable belief that Plaintiff was subjected to unlawful sexual harassment.  (R&R at 22-23).  The Court finds no plain error in this conclusion.  <u>See</u> <u>Clover</u>, 176 F.3d at 1351 ("The [sexual harassment] conduct Clover described misses the mark by a country mile.  It follows that Clover's belief the conduct created a sexually hostile environment for Waters was not objectively reasonable."); <u>Henderson v. Waffle House, Inc.</u>, 238 F. App'x 499, 502-03 (11th Cir. 2007) (finding that plaintiff lacked a good faith, reasonable belief that she was subjected to sexual harassment even though her manager pulled her hair, called her "Dolly," made a comment about her large breasts in front of a customer, told her she looked like she was going to burst when she wore a new shirt, told her "they

did not make aprons 'big enough for boobs like [hers],'" and told her not to stand

so close to him because she made him nervous and he would get in trouble if he

told her why).

The Magistrate Judge also found that Plaintiff cannot establish a casual

connection between his EEOC charge and his termination.  (R&R at 23-24).  To

establish a causal connection, Plaintiff must show that his employer was aware of

the protected conduct and that the protected activity and adverse action were not

wholly unrelated.  McCann v. Tillman, 526 F.3d 1370, 1376 (11th Cir. 2008).

"The burden of causation can be met by showing close temporal proximity

between the statutorily protected activity and the adverse employment action.  But

mere temporal proximity, without more, must be very close."  Thomas v. Cooper

Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (citations and internal

quotation marks omitted).

On February 16, 2012, Plaintiff filed his EEOC charge against the City of

Atlanta.  On July 22, 2013, the City terminated Plaintiff's employment.  The

Magistrate Judge found that this seventeen (17) month gap is too long to establish

causation and that Plaintiff does not offer any other non-speculative evidence of a

causal connection.  (R&R at 24).  The Court finds no plain error in this

determination.  See Thomas, 506 F.3d at 1364 ("A three to four month disparity

between the statutorily protected expression and the adverse employment action is not enough.  Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." (internal citations omitted)).

Even if Plaintiff could establish a prima facie case of Title VII retaliation, his retaliation claim still fails under the burden-shifting framework of McDonnell because Plaintiff does not raise a genuine issue of material fact as to whether the reasons given for his suspension or termination were pretextual.  If a plaintiff establishes a prima facie case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999).  "If the defendant offers legitimate reasons, the presumption of retaliation disappears," and "[t]he plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." Id.

The week before the January 31, 2012, incident, Plaintiff's supervisor, John Raikes, warned Plaintiff that he was prohibited from filming in the workplace.  The investigation into Summerour's conduct revealed that Plaintiff continued to film

27

co-workers in the workplace and during garbage collection routes.  As a result,

Plaintiff was suspended for five (5) days without pay.  A year later, on

February 7, 2013, Plaintiff recorded a training session at the City Department of

Public Works' Lakewood Facility.  On July 22, 2013, City of Atlanta terminated

Plaintiff's employment for filming in the workplace after prior warnings and a

suspension.  The Magistrate Judge found that Plaintiff's persistent filming at work

represents a non-discriminatory reason for his suspension and termination, and that

Plaintiff offers no evidence that the proffered reason is pretextual.  (R&R at 26).

The Court finds no plain error in this determination or in the Magistrate Judge's

recommendation that Plaintiff's retaliation claim be dismissed.  Defendants are

entitled to summary judgment on Plaintiff's retaliation claim.[8,9]

---

[8]     In his Objections, Plaintiff asserts that City of Atlanta told him he "recorded
an incident of Sexual Harassment that took place outdoors in the public in the
equipment parking lot of my employer."  (Objections at 2).  Plaintiff claims "[a]s
an employee [he] was bound to report this incident of violence that created a
hostile work place under the law."  (Objections at 2).  The Court overrules this
objection for several reasons.  First, Plaintiff does not explain how these
allegations support his claims, offers no specific citations to the record, and fails to
explain the legal basis of his alleged duty to report the incident or how this duty
required him to record the incident.  Second, Plaintiff offers allegations but does
not "specifically identify" any findings in the R&R to which he objects.  Marsden,
847 F.2d at 1548.  Third, to the extent Plaintiff now seeks to introduce facts for
consideration on summary judgment, he impermissibly circumvents Local
Rule 56.1, which is the "only permissible way . . . to establish a genuine issue of
material fact."  Reese, 527 F.3d at 1268.  Fourth, to the extent Plaintiff asserts he

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Magistrate Judge Linda T. Walker's Final Report and Recommendation [34] is **ADOPTED**.

**IT IS FURTHER ORDERED** that Plaintiff Joseph F. Benton, III's Objections [38] are **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants City of Atlanta, Richard Mendoza, and Yvonne Cowser Yancy's Motion for Summary Judgment [29] is **GRANTED**.

**SO ORDERED** this 9th day of August, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

was suspended in retaliation for video-recording the January 31, 2012, incident, he does not establish a retaliation claim because the incident he recorded and reported did not violate Title VII.  See 42 U.S.C. § 2000e-3(a).  As explained above, the January 31, 2012, incident did not constitute sexual harassment or support an objectively reasonable belief of sexual harassment.

9   The Court would reach the same conclusions expressed in this Order even on a de novo review.  Defendants are entitled to summary judgment on each of Plaintiff's claims.